IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JEFFERY MORRISON**, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. **06-183-WDS** |
| | ) | |
| **DONALD GAETZ**,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT and RECOMMENDATION**

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to United States District Judge William D. Stiehl pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

On November 17, 1999, petitioner Jeffery Morrison was convicted by a Massac County jury of the first degree murder of Roxanne Colley. He was also convicted of two counts of aggravated kidnaping of Colley's four-year-old twin sons, one count of armed violence and one count of unlawful possession of a stolen motor vehicle. The last conviction was vacated on appeal. He was sentenced to concurrent terms of 40 years imprisonment for first degree murder, 10 years imprisonment for each kidnaping count, and 12 years imprisonment for armed violence.

Now before the court is his petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

**Procedural History**

---

[1] Donald Gaetz is now the warden of Menard Correctional Center, and is substituted as respondent herein. See, Rules Governing Section 2254 Cases, Rule 2(a).

1

Morrison filed a direct appeal and postconviction petition in state court. After exhausting those procedures, Morrison filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Applying the mailbox rule, the petition was filed in this court on February 22, 2006.

Petitioner filed a Motion for Leave to File an Amended Petition, and a Motion for Stay and Abeyance Procedure. **(Docs. 31 & 32)**. Those motions were denied. Petitioner also filed a Motion to Supplement, **Doc. 33**, which was granted. The order granting the Motion to Supplement permits petitioner to include a claim of actual innocence. **See, Doc. 41.**

Respondent filed a response and a supplemental response to the petition at **Docs. 10 and 18**, and supplemented the record at **Doc. 17.** Petitioner filed a reply and a supplemental reply at **Docs. 15 and 20.**

This recitation of the facts giving rise to Morrison's conviction are derived from the Fifth District Appellate Court's Rule 23 Order affirming the conviction on direct appeal. **See, Doc. 10, Ex. A, pp. 2-7**. On October 23, 1998, Roxanne Colley died at her home in Brookport, Illinois, from a gunshot wound to the back. Roxanne was the girlfriend of petitioner's brother, Glen. At the time of the murder, Glen had been staying at Roxanne's home with Roxanne and her twin sons for about a month.

On the day before the murder, petitioner, his brother Glen, Roxanne, and her twin sons drove to the home of one R.D. Riley near Hickory, Kentucky. Riley was friend of Roxanne's. Their purpose was to pick up a heating stove that Riley gave to Roxanne. Riley testified that Glen had never been to his home before, but petitioner had been there and had spent the night there before. The heater would not fit into Roxanne's car, so Roxanne drove Riley's pickup truck back to her home. Riley rode along with her, while petitioner, Glen, and the twins traveled

2

in Roxanne's car. Riley, as well as Glen, spent the night at Roxanne's house. Petitioner did not.

On the morning of October 23, 1998, Roxanne drove Riley home in his truck. Glen and petitioner, who had been picked up that morning, drove Roxanne's car to Riley's house. As the group was getting into Roxanne's car to leave, Riley saw petitioner with "something wrapped up in a red" cloth of some kind. Riley then saw petitioner quickly jump into the car and place the object in the backseat or on the floorboard.

Riley kept a deer rifle in his bedroom closet behind some clothes. A few days later, he noticed that the rifle was missing.

Glen testified that, on the day before the murder, he "consumed a vast amount of beer and whiskey." That evening, "Glen and Roxanne had an argument in the kitchen when she attempted to awaken him after he had passed out at the kitchen table." Roxanne slapped Glen, and Glen "beat her up." The next morning, Glen and Roxanne bought more beer and picked up defendant. Petitioner and his brother drank whiskey and beer. Later that day, after the group had returned from taking Riley home, according to Glen's testimony, he passed out from drinking and awoke to hear Roxanne accuse petitioner of stealing a gun from the home of her friend, Riley. Petitioner threatened to shoot Roxanne, and she replied that he did not have the nerve. Petitioner then shot Roxanne in the back as she was going out the front door. Glen further testified that one of Roxanne's sons was in the living room and one was in the hallway at that time. Glen suggested that they take the boys to the home of Roxanne's mother. When they went outside, one of the boys said that petitioner had shot his mother.

Glen further testified that they left Roxanne's home with the two boys in the car, and that petitioner stated that they were taking the boys as hostages. Glen testified that the gun, which he

3

had never seen before, was between the front seats in the car. Glen thought that petitioner intended to drive to their father's house in Columbia, Kentucky. He spotted a sheriff's car when they were near Paducah, Kentucky, and hit the steering to make the car swerve. The police pulled them over, and, according to Glen, he told them that petitioner had shot Roxanne.

Glen told the police that evening that his brother must have bought the gun in a pawnshop. Because things were "hazy" due to his heavy drinking that day, it was only later that he recalled hearing Roxanne accuse his brother of stealing the gun from Riley. In December, 1998, Glen gave a statement to the police indicating that Roxanne had accused defendant of taking Riley's gun. Glen was initially charged with the murder of Roxanne and the kidnaping of her sons, but the those charges were dismissed. Glen plead guilty to domestic battery for hitting Roxanne. He agreed to testify against defendant.

At trial, Riley identified the gun that was found in the car as the rifle that had been taken from his home on the day of the murder.

Illinois State Police Sergeant Alan Burton testified that he interviewed Glen on the evening of the murder. Glen did not tell Sergeant Burton that Roxanne had accused petitioner of taking Riley's gun before she was shot. Glen stated that petitioner had told him that he and Roxanne had been seeing each other while Glen was out of town working, but Glen did not believe him.

Douglas McDonald, who lived across the street from Roxanne, testified that he heard a gunshot from the direction of Roxanne's house on the day of the murder. He then saw petitioner and his brother, Glen, pick up Roxanne's body and carry it into the house. He rode his bicycle over to Roxanne's house, and saw defendant and Glen getting into Roxanne's car. One of the

4

men got out of the car, went back into the house, and came out with Roxanne's four-year-old twin sons. McDonald heard one of the boys say "Jeff shot my mommy - shot her dead." After they drove away, McDonald went into the house and discovered that Roxanne was dead.

McDonald's niece, Andrea, testified that she heard a noise and saw Roxanne "flying" out the door. She then saw petitioner wiping his hands off with a white rag, and saw petitioner pull Roxanne back into the house.

An Illinois State Police forensic scientist testified that there were no fingerprints on the rifle or spent shell found in the car.

## Grounds for Habeas Relief

Petitioner asserted the following grounds in his original petition:

1. The state played a videotape of petitioner being questioned by police. The tape showed petitioner invoking his right to counsel and terminating the questioning; trial counsel was ineffective and the "State court's decision was incorrect and unreasonable to [sic] federal law."

2. The conviction on two counts of aggravated kidnaping, a class X felony, should be modified to reflect that the offense is a class 1 felony, because the aggravated kidnaping statute was amended by legislation that violates the Illinois Constitution's single subject rule.

3. Petitioner was denied a fair trial when the trial court admitted, as a spontaneous declaration, an out-of-court statement made by the four year old son of the murder victim that "Jeff shot my mommy - shot her dead."

**Doc. 1, pp.9-10.**

In addition, pursuant to the court's order granting petitioner's Motion to Supplement, petitioner asserts a claim of actual innocence. **See, Doc. 41.**

## Analysis

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death

Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." **Bell v. Cone, 535 U.S. 685, 693, 122 S.Ct. 1843, 1849 (2002)**.

Habeas is not another round of appellate review. Federal courts do not review state court determinations of state law questions on habeas review. **Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); Bloyer v. Peters, 5 F.3d 1093, 1098 (7th Cir. 1993).** Rather, **28 U.S.C. §2254(d)** restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or " a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Petitioner must clear two procedural hurdles before the court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. **Rodriguez v. Peters, 63 F.3d 546, 555 (7th Cir. 1995).** "Before a federal court may grant *habeas* relief to a state prisoner, the prisoner must exhaust his remedies in state court." **O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).** "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." ***Id.*; see also, 28 U.S.C. § 2254(c).** In *O'Sullivan v. Boerckel*, the Supreme Court of
 the United States specifically addressed exhaustion under Illinois' two-tiered appellate process, holding that issues must be raised not only to an intermediate appellate court, but also to the

Illinois Supreme Court, which offers discretionary review (except under a limited number of special circumstances, which are not applicable to this case). ***O'Sullivan*, 526 U.S. at 843-846.**

Petitioner can circumvent this bar to review if he is able to demonstrate cause for his procedural error **and** establish prejudice resulting from that error, i.e., "cause and prejudice." ***Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999)**; and ***Coleman v. Thompson*, 501 U.S. 722, 750 (1991)**. "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." ***Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004)**. In order to demonstrate prejudice, petitioner must show that the violation of his federal rights caused him actual and substantial prejudice. *Id.*

Morrison has cleared the first procedural hurdle, exhaustion. He has exhausted all available avenues of relief through the Illinois system, in that he is time barred from further pursuing the alleged constitutional errors in a state post-conviction proceeding. **See 725 ILCS 5/122-1(c); see also *O'Sullivan*, 526 U.S. at 844 (holding that repetitive petitions are not required).**

### Ineffective Assistance of Counsel with Regard to Videotape

Respondent concedes that petitioner adequately presented to the state court the claim that counsel was ineffective for failing to object to the videotape in which he invoked his right to counsel and terminated the police questioning.

Petitioner confirms that he is not claiming that counsel was ineffective for failing to object to the prosecutor's reference to the videotape in his opening statement. **See, Doc. 29**. Therefore, the court will not analyze respondent's argument, set forth in **Doc. 26**, that such a

7

claim is procedurally defaulted.

On direct appeal, the Fifth District considered Morrison's claim that his counsel had been ineffective for failing to object to part of the videotaped statement, and for failing to move for a mistrial after the tape was shown to the jury. The Rule 23 Order on direct appeal is located at **Doc. 10, Ex. A.** The videotape shows petitioner being interviewed by Sergeant Burton. Burton told petitioner that witnesses had seen him shoot Roxanne, and that the police wanted to know how and why it happened. Petitioner was "silent for a time after this question and then stated that he had no idea what Burton was talking about. He then stated that he wanted to talk to a lawyer before anything else was said. Burton terminated the interview by stating that [Morrison] would probably need a lawyer." **Doc. 10, Ex. A, p. 8.**

Whether counsel was ineffective is governed by ***Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)**. The issue for this court on habeas is whether the state court's decision was "contrary to" or constituted an "an unreasonable application of" Supreme Court precedent. **28 U.S.C. § 2254(d)(1)**. "Avoiding these pitfalls does not require citation of [Supreme Court] cases - indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." ***Early v. Packer*, 537 U.S. 3, 9, 123 S.Ct. 362 (2002) (emphasis in original).**

The Seventh Circuit has noted that the scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). ***Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003).** The unreasonable application standard is "a difficult standard to meet." ***Id.*, at 662.** Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the

8

boundaries of permissible differences of opinion." *Id.*, **at 662 (internal citation omitted).**

The Seventh Circuit has emphasized that, when considering a claim of ineffective assistance of counsel on habeas, federal courts must honor any "reasonable" state court decision; "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus." ***Holman v. Gilmore*, 126 F.3d 876, 881-882 (7th Cir. 1997)**.

This court concludes that the state court correctly applied ***Strickland v. Washington*** in its Rule 23 Order. **Doc. 10, Ex. A, pp. 8-10.**

The ***Strickland*** analysis is two-pronged; petitioner must demonstrate that counsel's performance was deficient, *and* that the deficient performance prejudiced the defense. ***Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.** The Appellate Court turned to the second prong, prejudice, correctly noting that, under ***Strickland***, the court "need not determine whether counsel's performance was deficient if the court can dispose of a claim of ineffective assistance on the ground of a lack of sufficient prejudice." **Doc. 10, Ex. A, p. 8, citing *Strickland*, 466 U.S. at 697, 104 S Ct. at 2069-70.** The court also cited the correct standard for prejudice, that is, "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Doc. 10, Ex. A, p. 9, citing *Strickland*, 466 U.S. at 694, 104 S Ct. at 2068.**

The Fifth District concluded that Morrison was not prejudiced by the showing of the challenged portion of the videotape because the evidence against him was overwhelming. The evidence included the testimony of an eyewitness to the murder, Glen Morrison. The court stated that the "consistent testimonies of Glen [Morrison] and Douglas [McDonald] show that

9

the evidence against defendant was overwhelming." **Doc. 10, Ex. A, p. 10.**

The disputed part of the videotape was brief, and the prosecutor did not refer to it in his closing argument. **See, Doc. 18, pp. 7-9.** This case is similar to *Allen v. Chandler*, **--- F.3d ----, 2009 WL 322147 (7th Cir. February 11, 2009)**, in which the Seventh Circuit upheld a finding that the state court's application of *Strickland* was not unreasonable where the state court found that the petitioner was not prejudiced by a reference to petitioner's silence where the evidence against him was "compelling," the reference was brief, and defendant's silence was not mentioned in closing argument. *Allen*, **2009 WL 322147, at \*5.** Here, likewise, the state court's application of *Strickland* was not unreasonable. It certainly does not lie outside the boundaries of permissible differences of opinion. *Jackson v. Frank*, **348 F.3d 658, 662 (7th Cir. 2003).** Because the state court reasonably applied *Strickland*, petitioner's first point is without merit.

In his answer, respondent notes that it is unclear whether petitioner's first point also encompasses a claim that admission of the videotape was a due process violation. Petitioner filed replies at **Docs. 15** and **20**. Therein, he states that he did intend to make a due process claim with respect to the videotape. Although it is highly doubtful that petitioner's first point can be stretched to state a due process claim, this court will address the issue for the sake of completeness.

The Due Process clause of the Fourteenth Amendment is violated by the "use for impeachment purposes of [defendant's] silence, at the time of arrest and after receiving *Miranda*

10

warnings." ***Doyle v. Ohio*, 426 U.S. 610, 619, 98 S. Ct. 2240, 2245 (1976)**. Later cases have emphasized that it is the *evidentiary use* of a defendant's silence which is prohibited; thus, the admission of evidence of an accused's silence, without more, does not violate the Due Process clause. See, e.g., ***Greer v. Miller*, 483 U.S. 756, 107 S. Ct. 3102 (1987); *Wainwright v. Greenfield*, 474 U.S. 284, 106 S. Ct. 634 (1986).**

Here, there was no *use* of petitioner's silence by the prosecution. The state did not ask the jury to draw any inference from his silence, or argue that petitioner's silence or request for an attorney were evidence of his guilt. Therefore, there was no due process violation. The constitution forbids "comment on" a defendant's silence, not "all mention at trial of Miranda warnings and the defendant's response to them." ***Splunge v. Parke*, 160 F.3d 369, 372-373 (7th Cir. 1998).**

### Classification of Aggravated Kidnaping as a Class X Felony

Morrison's second point is that the Illinois statute which makes aggravated kidnaping a Class X felony violates the Illinois Constitution's single subject rule. This point cannot be the basis for habeas relief because it alleges only a violation of state law. In a habeas case, a federal court "may not review state-court interpretations of state law." ***Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009)**.

### Admission of Statement of Alex Colley

For his third point, petitioner argues that he was denied a fair trial when the court admitted as a spontaneous declaration the statement of the victim's young son that "Jeff shot my mommy - shot her dead." Petitioner argues that he is entitled to habeas relief because "it was unclear that the child actually saw his mother shot, as opposed to merely repeating what another

11

suspect in the murder had told him." **Doc. 1, p. 10.**

According to respondent, Morrison presented a state law claim with respect to the admission of Alex Colley's statement, but did not properly present a federal claim with respect thereto. This court disagrees.

A habeas petitioner must "fairly present" his federal constitutional claim to the state court for one full round of review. ***Verdin v. O'Leary*, 972 F.2d 1467, 1472-73 (7th Cir. 1992); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)**. Fair presentment requires that the point be presented as a matter of *federal constitutional law* at each stage of the state proceedings. ***Harding v. Sternes*, 380 F.3d 1034, 1046 (7th Cir. 2004).**

"A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" ***Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351 (2004).**

Morrison raised the issue of the admission of Alex' statement in his supplemental brief on direct appeal. His point was that it was error to admit the statement as a spontaneous declaration "where it was unclear that the child actually saw his mother shot, as opposed to merely repeating what another suspect in the murder [i.e. petitioner's brother Glen] had told him." Morrison cited ***People v. Smith*, 604 N.E.2d 858 (Ill., 1992),** an Illinois Supreme Court which analyzed the issue on federal grounds. **Doc. 10, Ex. C, p. 3.** In *Smith*, the Illinois Supreme Court discussed ***White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736 (1992)**. The Illinois Supreme Court explained that "*White* went on to hold that because the excited utterance

exception to the hearsay rule provides unique protections as to trustworthiness, no confrontation clause concerns are raised when this exception is invoked."

Furthermore, the Fifth District understood that Morrison was raising a Confrontation Clause issue with respect to the admission of Alex' out-of-court statement. In its Rule 23 Order on direct appeal, the Fifth District stated "In order to satisfy the requirements of the confrontation clause of the sixth amendment to the United States Constitution, hearsay statements of an unavailable child declarant must bear adequate 'indicia of reliability' to be admitted under an exception to the hearsay rule." The Fifth District cited **People v. Williams, 193 Ill. 2d 306, 350, 739 N.E.2d 455, 478 (2000)**, in support. **Doc. 10, Ex. A, p. 11.**

***People v. Williams***, in turn, applied United States Supreme Court precedents in its analysis of a confrontation clause challenge to the admission of an out-of-court statement. ***Williams*** cited ***Idaho v. Wright*, 497 U.S. 805, 816, 110 S.Ct. 3139, 3147 (1990)** and ***Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539 (1980)**. This court finds that the state court understood that Morrison was presenting a Confrontation Clause issue on direct appeal. Thus, the issue for this court on habeas is whether the state court's decision was "contrary to" or constituted an "an unreasonable application of" Supreme Court precedent. **28 U.S.C. § 2254(d)(1)**.

Morrison's direct appeal was decided on April 16, 2002, and his petition for leave to appeal to the Supreme Court was denied on October 2, 2002. **Doc. 10, Ex. G**. At the time, the relevant Supreme Court precedents were ***Idaho v. Wright*, 497 U.S. 805, 816, 110 S.Ct. 3139, 3147 (1990)** and ***Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539 (1980)**.

In ***Idaho v. Wright, supra***, the Supreme Court noted that "From the earliest days of our

Confrontation Clause jurisprudence, we have consistently held that the Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." *Idaho v. Wright*, **497 U.S. at 813, 110 S. Ct. at 3143.** The Court explained that, in the earlier case of ***Ohio v. Roberts**, supra,* it had set forth a "general approach" for determining when an out-of-court statement that is a hearsay exception is admissible despite the Confrontation Clause. This approach has two steps. First, the prosecution must either produce, or demonstrate the unavailability of, the witness who made the out-of-court statement. Secondly, once unavailability has been shown, the statement is admissible only if it bears adequate "indicia of reliability." *Idaho v. Wright*, **497 U.S. at 815-816, 110 S. Ct. at 3146, citing *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539.** "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.*" Idaho v. Wright, Id.*

Petitioner's point on direct appeal, in his petition for leave to appeal, and in the habeas petition filed in this court has consistently been directed to the second step of the *Roberts* analysis, in that he has challenged whether the trial was correct in its determination that the boy's statement was a spontaneous declaration. Thus, it is unnecessary for this court to revisit the issue of whether the witness was "unavailable." **See,** *Marshall v. Young*, **833 F.2d 709, 716 (7th Cir, 1987).**

The Seventh Circuit has held that the spontaneous declaration exception is a "firmly rooted exception to the hearsay rule." *Smith v. Fairman*, **862 F.2d 630, 635-636 (7th Cir. 1988).**

14

Applying the *Ohio v. Roberts* analysis, if the out-of-court statement qualified under Illinois law as a spontaneous declaration, its reliability could be inferred, and the admission of the statement did not violate the Confrontation Clause. **Smith, 862 F.2d at 636.**

Morrison does not dispute that the spontaneous declaration exception is a firmly rooted exception to the hearsay rule. His claim on direct appeal, and in this court, is that the trial court erred in holding that Alex' statement was a spontaneous declaration because it was not established that Alex had seen his mother shot. Relying on the analysis set forth in *People v. Williams*, **193 Ill. 2d 306, 739 N.E.2d 455 (2000)**, the Fifth District decided on direct appeal that the trial court had been correct in holding that Alex' statement qualified as a spontaneous declaration. In so doing, the Fifth District reviewed the considerable evidence which established that the statement qualified as a spontaneous declaration. **Doc. 10, Ex. A, pp. 11-12.**

Petitioner suggests that the state court's decision is the result of an unreasonable determination of the facts. **See, Doc. 15, pp. 15-16.** For instance, he points out that some of the adult witnesses testified that they had trouble telling petitioner and his brother apart, and he suggests that the twins may have had the same difficulty. However, that point ignores the evidence that petitioner's brother had been living in the house with Roxanne and the twins for a month at the time of the murder. Further, petitioner's argument ignores the fact that the point raised in the state court and in the habeas petitioner was that the statement was not a spontaneous declaration because there was no evidence that Alex saw his mother shot. On the contrary, Glen's testimony established that both of the boys were present when their mother was shot. **See, Doc. 10, Ex. A, p. 5, 12.** The Fifth District's finding that Alex' statement was a spontaneous declaration was not the result of an unreasonable determination of the facts. The

admission of the statement did not violate the confrontation clause under law that was applicable at the relevant time.

The court notes that **Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539 (1980)** and its progeny were abrogated by **Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004)**. However, that fact does not affect the analysis in this case, as the Supreme Court held in **Whorton v. Bockting, 549 U.S. 406, 127 S.Ct. 1173 (2007)**, that *Crawford* does not apply retroactively to convictions that were final before it was decided.

### Claim of Actual Innocence

Morrison was granted leave to raise a claim of actual innocence. **See, Doc. 41.** This claim is set forth in a supplement to the petition, and is supported by an affidavit from one Shawn Hollowell. Hollowell is an inmate in the IDOC who asserts that, in 1999, he was incarcerated at the Massac County Jail with Glen Morrison. According to Hollowell, Glen Morrison told him that he (Glen) had murdered Roxanne and that he "had nothing to worry about as he had set it up to blame his brother Jeff." Hollowell affidavit, ¶5(a) and (b).

A claim of actual innocence does not itself present grounds for habeas relief. "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." **Herrera v. Collins, 506 U.S. 390, 404, 113 S.Ct. 853, 862 (1993).** Evidence of actual innocence serves as a gateway to consideration of a habeas petitioner's procedurally defaulted claims; in order to pass through that gateway, the habeas petitioner must present new evidence that establishes that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." **Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851,**

**867 (1995)**.

It is doubtful that Morrison's new evidence, i.e., the Hollowell affidavit, satisfies the *Schlup* standard, which is "demanding and permits review only in the 'extraordinary' case." *House v. Bell*, **547 U.S. 518, 537, 126 S.Ct. 2064, 2078 (2006)**. Even if the new evidence is sufficient, it has no impact on the outcome of this case, because there are no procedurally defaulted claims remaining to be reviewed. This court has considered every claim raised in the original habeas petition.[2]

Petitioner also asserts a free-standing actual innocence claim in that he argues that he is entitled to habeas relief because he is actually innocent. That argument must be rejected. It is true that the Supreme Court has suggested, hypothetically, that a freestanding actual innocence claim might be valid in a capital case. **See,** *House v. Bell*, **547 U.S. 518, 554-555, 126 S.Ct. 2064, 2086 (2006), and cases discussed therein.** However, the Supreme Court has never held that actual innocence is, by itself, a basis for habeas relief in a capital case, much less a case where the petitioner is not under a sentence of death.

In sum, having considered all of the claims raised in the petition, this court concludes that Jeffery Morrison has not demonstrated that his conviction violated the United States Constitution. Therefore, habeas relief cannot be granted. **28 U.S.C. §2254(a)**.

## Recommendation

---

[2] Procedurally defaulted claims must be distinguished from claims that are time-barred. Petitioner's motion for leave to amend and motion for stay and abeyance were denied because he sought leave to assert claims that were time-barred. See, Doc. 41. A *Schlup* actual innocence showing does not serve to revive or toll the statute of limitations. Actual innocence is "unrelated to the statutory timeliness rules." *Escamilla v. Jungwirth*, **426 F.3d 868, 871-872 (7th Cir. 2005).**

This court recommends that the Petition for Writ of Habeas Corpus should be denied in all respects.

Objections to this Report and Recommendation must be filed on or before **March 16, 2009.**

**DATE: February 26, 2009.**

                                              **s/ Clifford J. Proud**
                                              **CLIFFORD J. PROUD**
                                              **UNITED STATES MAGISTRATE JUDGE**